IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OWNERS INSURANCE
COMPANY,

               Plaintiff,

v.

JUDY GORDON, AXIO DESIGN,
LLC, ROBERT A. LEE, BRENDAN
C. MURPHY, BCM CUSTOM
HOMES, INC., a Georgia
corporation, SARAH M. LEE,
CHESAPEAKE DEVELOPMENT,
INC., a Georgia corporation, and
RAL PROPERTIES AND
DEVELOPMENT, INC.,

               Defendants.

CIVIL ACTION NO.

1:07-CV-0369-JFK

## ORDER AND OPINION

Plaintiff Owners Insurance Company filed the above-styled action against the

named Defendants on February 12, 2007.  [Doc. 1].  Plaintiff's complaint is for

declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil

Procedure.  [Id.].  Plaintiff seeks the court to enter judgment that Plaintiff has no duty

to defend or indemnify any of the Defendants under certain insurance policies for

claims asserted in an underlying lawsuit, <u>Gordon and Axio Design, LLC v. Lee, et al.</u>, 1:05-CV-2162-JFK, pending in this court.  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff has moved for summary judgment, seeking a declaration in its favor based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted by the parties.  [Doc. 56].

## I.    Facts

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party.  <u>See</u> <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  <u>See</u> <u>Midwestern Waffles, Inc. v. Waffle House, Inc.</u>, 734 F.2d 705, 714 (11th Cir. 1984).  Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Plaintiff's motion [Doc. 56] for summary judgment.

In or around September of 2000, Defendant Judy Gordon, Defendant Robert Lee, and an individual named Herman Howard joined together to form and become

partners in The Design Collaborative Kaisen, LLC ("TDC"), in Atlanta. [1:05-CV-2162-JFK, Doc. 79 at 4]. The work initially performed by TDC was architectural design, interior design, and graphic design. [Id.]. In late 2000 or early 2001, TDC entered into a joint venture with Defendant BCM Custom Homes to design and build houses in an area of Atlanta called Lynwood Park. [Id.]. Defendant Brendan Murphy was the President of BCM Custom Homes. [Id.]. In the fall of 2001, Howard left TDC at the behest of Gordon and Lee. [1:05-CV-2162-JFK, Doc. 79 at 7]. After the departure of Howard, Gordon and Lee reorganized TDC, redistributed responsibilities, and renamed it Axio Design, LLC ("Axio"), in 2002. [Id.].

Plaintiff Owners Insurance Company issued a commercial general liability policy to BCM Custom Homes, policy number 994618-48440171, with effective policy periods from August 4, 1999, through November 5, 2002 ("BCM policy"). [PSMF ¶ 9; Murphy Aff. ¶ 22]. By amendment effective November 5, 2002, the named insured for the BCM policy was changed to Chesapeake Development, Inc.[1] [PSMF ¶ 11; Murphy Aff. ¶ 23]. In 2002, Owners Insurance issued a commercial general liability insurance policy to Chesapeake Development ("Chesapeake policy").

---

[1]Chesapeake Development was the name of the company formed by Lee and Murphy after the dissolution of the Axio/BCM Lynwood Park joint venture. [1:05-CV-2162-JFK, Doc. 79 at 10].

3

[PSMF ¶ 12; Murphy Aff. ¶¶ 24, 25].  The effective policy period for policy number 994618-48440171 was from November 5, 2002, through September 7, 2004, and the effective policy period for policy number 044618-48044326 was from September 7, 2004, through September 7, 2006.  [PSMF ¶ 12; Murphy Aff. ¶¶ 24, 25].  Brendan Murphy stated in his affidavit that the insurance agent for BCM Custom Homes and Chesapeake Development was Mark Verbeke of Taylor & Turner Insurance Services, Inc.  [Murphy Aff. ¶ 19].

The language of the policies contains the terms and conditions pursuant to which Owners Insurance agreed to provide insurance coverage.  [PSMF ¶ 21].  Under Coverage A, the BCM policy and the Chesapeake policy provide: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  [Richards Aff., Exs. A, B].  Under Coverage B, the policies provide: "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this coverage part applies."  [Id.].

The BCM Policy and Chesapeake Policy, in pertinent part, define "advertising injury" as "injury arising out of . . . Misappropriation of advertising ideas or style of

4

doing business; or Infringement of copyright, title or slogan." [Richards Aff., Exs. A, B]. Under the Section entitled "Who is an Insured," the policies provide:

> 1. If you are designated in the Declarations as: . . .

> c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

> 2. Each of the following is also an insured:

> a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. . . .

> 4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. . . .

> No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

[PSMF ¶ 19].  The BCM policy and the Chesapeake policy also provide the following section, which is entitled "Duties In The Event Of Occurrence, Claim Or Suit":

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include: (1) How, when and where the "occurrence" or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

5

b. If a claim is made or "suit" is brought against any insured, you must: (1) Immediately record the specifics of the claim or "suit" and the date received; and (2) Notify us as soon as practicable. You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must: (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"; (2) Authorize us to obtain records and other information; (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

[Richards Aff., Exs. A, B].

In September of 2002, Lee and Murphy held a meeting with Gordon, at which time Lee informed Gordon that he wanted to withdraw from Axio and pursue a business relationship with Murphy and BCM Custom Homes.  [1:05-CV-2162-JFK, Doc. 79 at 9].  During the meeting, Lee handed Gordon a letter which stated, in part:

This letter is to serve as my formal notice to withdraw from Axio Design, LLC.  I have included in this notice a review of our current company's operating agreement given by Harold Hudson as well as a review of my corporate responsibility regarding my ability to enter a business relationship with Brendan Murphy.  Also included in this notice is a proposal for how the assets of Axio Design, LLC should be divided as

6

well as a way Axio Design may be removed from the construction liabilities in Lynnwood [sic] Park.

[Id.; Robert Lee Dep. at 104, Ex. 4; Gordon Dep. at 90].

On October 7, 2002, Judy Gordon wrote a letter to Robert Lee which was "in response to your recent letter conveying an offer to terminate our business arrangements." [Gordon Dep., Ex. 22]. In the letter, Gordon proposed a number of settlement terms. For example, Gordon proposed that Lee resign as a member of Axio and that the assets of Axio, Brendan Murphy and BCM Custom Homes be divided in a particular way. [Id.]. Gordon also wrote, "Since all of the residential designs being used are the property of Axio, in the event that any of these designs are used in the future, a licensing fee of $17,500 must be paid to Axio for each such use." [Gordon Dep., Ex. 22]. A week later, Gordon wrote another letter to Lee stating, in pertinent part: "I am waiting for your response to my recent counteroffer. Should it not be received by the close of business on Friday, October 18th, I may be left with no alternative but to seek my remedy in court, which would be an expensive and protracted process for all involved." [Gordon Dep., Ex. 23].

According to Gordon, Lee responded with a proposal on October 18, 2002, and Gordon wrote another letter to Lee on October 28, 2002. [Gordon Dep., Ex. 24].

Gordon noted numerous disputes she had with Lee regarding his proposed settlement terms and division of assets. [Id.]. Gordon also wrote, "The fees in my earlier proposal for the use of Axio-owned plans were based upon the fee schedules commonly employed by registered architects in residential design. . . . Furthermore, the house plans in question are the property of Axio. Any claims to the contrary are false. Any and all future use of the plans include compensation to Axio." [Gordon Dep., Ex. 24].

Almost three years later, on August 19, 2005, Gordon and Axio filed a complaint in this court against Robert Lee, Brendan Murphy, BCM Custom Homes, Sarah Lee, Chesapeake Development, and RAL Properties and Development, (collectively, the "Chesapeake Defendants"). [1:05-CV-2162-JFK, Doc. 1]. In the complaint, Gordon and Axio asserted many claims based on the division of assets. Another prominent issue in the underlying suit (and the issue upon which the parties focused in their summary judgment motions) was whether the Chesapeake Defendants' use of certain residential design plans constituted copyright infringement. [1:05-CV-2162-JFK, Doc. 79 at 9]. Brendan Murphy stated that within a few days of being served with the complaint in August 2005, he called Mark Verbeke, the insurance agent for Chesapeake Development, and told him about the lawsuit. [Murphy Aff. ¶¶ 19, 27].

8

Murphy discussed the claims with Verbeke and faxed him a copy of the complaint. [Murphy Aff. ¶ 27]. In September 2005, Verbeke arrived at the Chesapeake office to discuss the renewal of insurance policies and present an insurance proposal. Murphy provided Verbeke with another copy of the complaint at that time, and they read through it together and discussed the claims. [Murphy Aff. ¶ 29]. According to Murphy, Verbeke informed him that the insurance policies would not provide coverage for the claims and damages sought in the underlying lawsuit. [Murphy Aff. ¶ 30].

Murphy stated that nine months later, in June 2006, "a mediation was attempted in the Underlying Lawsuit at the offices of [his] attorneys at Chamberlain Hrdlicka." [Murphy Aff. ¶ 31]. During the mediation, Murphy and one of his attorneys called Verbeke. Verbeke then stated that, although he had received notice of the lawsuit and been provided with a copy of the complaint, he had not notified Owners Insurance of the suit. [Id.]. Murphy and his attorney asked Verbeke to notify Owners Insurance and forward the complaint. [Id.]. Mike Richards, a claims representative for Owners Insurance, stated in his affidavit that the company was first notified of the underlying lawsuit on June 20, 2006. [Richards Aff. ¶ 11].

On May 14, 2007, this Court entered its Order on the summary judgment motions filed by Axio and the Chesapeake Defendants in the underlying lawsuit.

9

[PSMF ¶ 5; 1:05-CV-2162-JFK, Doc. 79]. The Order denied Axio's motion for summary judgment and granted partial summary judgment in favor of the Chesapeake Defendants. [PSMF ¶ 7; 1:05-CV-2162-JFK, Doc. 79]. In the present case, the Chesapeake Defendants seek coverage and indemnity for the claims asserted in the underlying lawsuit under certain insurance policies issued by Plaintiff Owners Insurance. [Docs. 1, 57]. Owners Insurance seeks the court to enter judgment that the company has no duty to defend or indemnify any of the Defendants under the relevant insurance policies for claims asserted in the underlying lawsuit. [Docs. 1, 56].

Additional facts will be set forth below as they become necessary for discussion of the parties' claims.

## II.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that

10

party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

The movant bears the initial burden of asserting the basis of its motion, and that burden is a light one. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2553. The movant is not required to negate its opponent's claim. See id. Rather, the movant may discharge this burden merely by "'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." Id. at 325, 106 S. Ct. at 2554. When this burden is met, the non-moving party is then required to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(e)).

While the evidence and factual inferences are to be viewed in a light most favorable to the non-moving party, see Rollins, 833 F.2d at 1529; Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987), that party "must do more than simply show that

11

there is some metaphysical doubt as to the material facts," <u>Matsushita Electrical Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The non-moving party must come forward with specific facts showing there is a genuine issue for trial. <u>See id.</u> at 587. An issue is not genuine if it is created by evidence that is "merely colorable" or is "not significantly probative." <u>Anderson</u>, 477 U.S. at 249-50, 106 S. Ct. at 2511; <u>accord</u> <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 828 (11th Cir. 1988). Similarly, substantive law will identify which facts are material. <u>See Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of every element essential to its case. <u>See Celotex</u>, 477 U.S. at 323, 106 S. Ct. at 2553; <u>Rollins</u>, 833 F.2d at 1528.

### III.   Discussion

Plaintiff Owners Insurance argues in its motion for summary judgment [Doc. 56] that the court should grant declaratory judgment in its favor and rule that no coverage is afforded under the relevant commercial general liability insurance policies. According to Plaintiff, the court should find that the company has no duty to defend or indemnify any of the Chesapeake Defendants for the claims asserted in the

underlying lawsuit.   Plaintiff Owners Insurance contends that the Chesapeake Defendants breached their duty under the terms of the insurance policies to notify Owners Insurance "as soon as practicable" of the disputes surrounding the termination of the business relationship between Chesapeake Defendants and Axio.  Plaintiff also argues that the Chesapeake Defendants breached their duty to notify Owners Insurance of Axio's lawsuit in a timely manner.[2]

During all relevant times, commercial general liability policies issued by Plaintiff Owners Insurance Company to Defendant BCM Custom Homes and later Defendant Chesapeake Development were in effect.  [PSMF ¶¶ 9, 11; Murphy Aff. ¶¶ 22, 23].  The BCM policy and the Chesapeake policy provide the following in a section entitled "Duties In The Event Of Occurrence, Claim Or Suit":

> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include: (1) How, when and where the "occurrence" or offense took place; (2) The names and addresses of any injured persons and witnesses; and (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

_____

[2]Plaintiff Owners Insurance also argues that the insurance policies exclude coverage for the claims asserted against the Chesapeake Defendants and that the company has no duty to defend or indemnify RAL Properties and Development. [Doc. 56 at 17-25].  Because Plaintiff is entitled to summary judgment on the basis of the Chesapeake Defendants' failure to comply with the policies' notice provisions, the court will not address these additional arguments.

13

[Richards Aff., Exs. A, B].  According to Plaintiff Owners Insurance, the Chesapeake Defendants failed to comply with this provision when they did not notify Plaintiff of their disputes with Axio and Judy Gordon in the fall of 2002.

"Under Georgia law, an insurance company is free to fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." Payne v. Twiggs County Sch. Dist., 269 Ga. 361, 363, 496 S.E.2d 690, 691 (1998) (citing Continental Cas. Co. v. HSI Fin. Servs., Inc., 266 Ga. 260, 262, 466 S.E.2d 4, 6 (1996)).  Moreover, "unambiguous terms in an insurance policy require no construction, and their plain meaning will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured." Id. at 363, 496 S.E.2d at 691-92 (citing Continental Cas., 266 Ga. at 262; 466 S.E.2d at 6; Liberty Nat'l Ins. Co. v. Davis, 198 Ga. App. 343, 344, 401 S.E.2d 555, 556 (1991)).  "It is also the general rule that the insured is chargeable with knowledge of all the conditions imposed upon him by the terms of his policy." Richmond v. Georgia Farm Bureau Mut. Ins. Co., 140 Ga. App. 215, 221, 231 S.E.2d 245, 250 (1976).  Insurance policy provisions which require the insured to provide prompt notice to the insurer of potential claims are common and have been held to be enforceable. See, e.g., Canadyne-Georgia Corp. v. Continental Ins. Co., 999 F.2d 1547

14

(11th Cir. 1993); South Carolina Ins. Co. v. Coody, 957 F. Supp. 234 (M.D. Ga. 1997); Richmond, 140 Ga. App. 215, 231 S.E.2d 245.  "The purpose of a notice provision in an insurance policy is to enable an insurer to investigate promptly the facts surrounding the occurrence while they are still fresh and the witnesses are still available, to prepare for a defense of the action, and, in a proper case, to determine the feasibility of settlement of the claim."  Coody, 957 F. Supp. at 237 (quoting Richmond, 140 Ga. App. at 221, 231 S.E.2d at 250).[3]

In the present case, under the terms of the policy, the Chesapeake Defendants were required to provide notice to Plaintiff Owners Insurance "as soon as practicable of an 'occurrence' or an offense which may result in a claim." [Richards Aff., Exs. A, B].  Plaintiff contends that the Chesapeake Defendants knew or should have known that claims could result from the disputes surrounding the termination of the business relationship between the Chesapeake Defendants and Axio in the fall of 2002.  [Doc. 56].  The Chesapeake Defendants acknowledge that they made no attempt to provide notice to Plaintiff Owners Insurance regarding any aspect of their disputes with Axio and Judy Gordon until late 2005.  However, the Chesapeake Defendants argue that they

---

[3]It is the insurer who "bears the burden of showing that a fact situation falls within an exclusionary clause of an insurance policy." Connell v. Guarantee Trust Life Ins. Co., 246 Ga. App. 467, 470, 541 S.E.2d 403, 406 (2000).

had no reason to believe that the 2002 disputes would give rise to a claim under the insurance policies until three years later, in August 2005, when Axio and Gordon served the Chesapeake Defendants with the complaint in the underlying lawsuit. [Doc. 57 at 6].

The issue that must be decided is whether the terms of the insurance policies required the Chesapeake Defendants to promptly notify Owners Insurance of the 2002 disputes with Axio and Gordon. If the duty to provide prompt notice arose in 2002, then the Chesapeake Defendants' decision not to make any effort to inform Owners Insurance until at least 2005 means that Defendants did not comply with the policies. Because the notice provision was a condition precedent to coverage, a failure to comply would result in this court finding that Plaintiff Owners Insurance has no duty to defend or indemnify any of the Chesapeake Defendants for the claims asserted in an underlying lawsuit. See Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc., 278 Ga. App. 1, 3, 627 S.E.2d 917, 919 (2006).

"The duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question." Coody, 957 F. Supp. at 237. The Chesapeake Defendants argue that they first learned of a possible claim under the insurance policies in August

16

2005, when they were served with the complaint in the underlying lawsuit.  [Doc. 57

at 6].  In the complaint, Gordon and Axio alleged claims based on the division of assets

and asserted that the Chesapeake Defendants' use of certain residential design plans

constituted copyright infringement.  [1:05-CV-2162-JFK, Doc. 1, Doc. 79 at 9].  The

insurance policies cover claims for "advertising injury," which is defined as "injury

arising out of . . . Misappropriation of advertising ideas or style of doing business; or

Infringement of copyright, title or slogan."  [Richards Aff., Exs. A, B].  Defendants

argue that the complaint's allegation of copyright infringement "was the first notice

any of the Chesapeake Defendants received as to any claim of advertising injury by

Gordon or AXIO."  [Murphy Aff. ¶ 17].

The court finds that the Chesapeake Defendants reasonably should have known

that their disputes with Axio and Gordon in the fall of 2002 could have resulted in a

claim for copyright infringement, which is covered under the terms of the insurance

policies.  [Richards Aff., Exs. A, B].  On October 7, 2002, Judy Gordon wrote a letter

to Robert Lee, wherein she proposed that Lee resign as a member of Axio and that the

assets of Axio, Brendan Murphy and BCM Custom Homes be divided in a particular

way.  [Gordon Dep., Ex. 22].  Gordon also wrote, "Since all of the residential designs

being used are the property of Axio, in the event that any of these designs are used in

17

the future, a licensing fee of $17,500 must be paid to Axio for each such use."
[Gordon Dep., Ex. 22].  At this point, the Chesapeake Defendants reasonably should
have known of the possibility of a claim for copyright infringement.

Ownership of a valid copyright is one of the elements necessary to establish
copyright infringement.  Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S.
340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991).  Gordon made it clear in
her letter that she believed that Axio owned the residential designs and that if Lee or
any of the Chesapeake Defendants wanted to use any of the designs, they would be
required to pay Axio a licensing fee.  [Gordon Dep., Ex. 22].  Because the Copyright
Act grants copyright protection to the owners of a work, Gordon's assertion of Axio's
ownership of the designs in the October 7th letter put the Chesapeake Defendants on
notice that their disputes with Axio and Gordon may have resulted in a copyright
infringement claim.  17 U.S.C. § 201(a).  This was not the only indication that the
Chesapeake Defendants received about the possibility of a claim.  On October 15,
2002, approximately a week after Gordon wrote the letter discussed *supra*, Gordon
wrote another letter to Lee stating, in pertinent part: "I may be left with no alternative
but to seek my remedy in court, which would be an expensive and protracted process
for all involved." [Gordon Dep., Ex. 23].  The Chesapeake Defendants obviously were

18

aware that Gordon was considering filing a lawsuit.  Gordon wrote another letter to Lee on October 28, 2002, wherein she again asserted that the residential design plans were owned by Axio and that she would not permit Lee or the Chesapeake Defendants to use the plans unless they paid Axio licensing fees.  [Gordon Dep., Ex. 24].  In the letter, Gordon stated to Lee: "The fees in my earlier proposal for the use of Axio-owned plans were based upon the fee schedules commonly employed by registered architects in residential design. . . .  Furthermore, the house plans in question are the property of Axio.  Any claims to the contrary are false.  Any and all future use of the plans include compensation to Axio."  [Gordon Dep., Ex. 24].

The court finds that as a result of these three letters sent in October 2002, the Chesapeake Defendants reasonably should have known that claims may have resulted under the terms of their insurance policies with Plaintiff Owners Insurance.  Therefore, as a condition precedent to coverage, the Chesapeake Defendants were required to provide notice to Plaintiff Owners Insurance "as soon as practicable."  [Richards Aff., Exs. A, B].  The Chesapeake Defendants made no effort to notify Owners Insurance of a possible claim until August 2005, after they were served with the complaint filed by Gordon and Axio.  [1:05-CV-2162, Doc. 1].  Brendan Murphy stated that within a few days of being served with the complaint in August 2005, he called Mark Verbeke,

19

the insurance agent for Chesapeake Development, and told him about the lawsuit, discussed the claims, and faxed him a copy of the complaint. [Murphy Aff. ¶¶ 19, 27]. Murphy stated that nine months later, in June 2006, he learned that Verbeke had not notified Owners Insurance of the suit.   [Murphy Aff. ¶ 31].  Murphy and his attorney asked Verbeke to notify Owners Insurance and forward the complaint.  [Id.].  Owners Insurance was first notified of the underlying lawsuit on June 20, 2006. [Richards Aff. ¶ 11].

As discussed *infra*, the court finds that Murphy's notice to Verbeke in 2005 did not constitute notice to Plaintiff Owners Insurance.  But even if it is assumed that Owners Insurance received notice of the lawsuit from the Chesapeake Defendants when Verbeke was first notified, this delay in notification was unreasonable as a matter of law.  The Chesapeake Defendants first knew or should have known of a potential claim in October 2002, but they waited until August 2005, a period of 34 months, before even attempting to notify Owners Insurance.  Courts in Georgia have held that notification delays shorter than the present one were unreasonable as a matter of law. For example, in Protective Ins. Co. v. Johnson, 256 Ga. 713, 714, 352 S.E.2d 760, 761 (1987), the Supreme Court of Georgia found that the insured's unexcused 17 month delay in giving the insurer notice was unreasonable and constituted a breach of the

insurance policy's requirement of notification "as soon as practicable." Likewise, the district court in <u>Coody</u>, 957 F. Supp. at 238-39, found that a 29 month delay in notifying the insurer of potential liability was not "as soon as practicable" as the policy required and, thus, was a "clear violation of the unambiguous terms of the policy." <u>See also</u> <u>Snow v. Atlanta Int'l Ins. Co.</u>, 182 Ga. App. 1, 354 S.E.2d 644 (1987) (holding that a ten month delay was unreasonable as a matter of law); <u>Richmond</u>, 140 Ga. App. at 221, 231 S.E.2d at 250 (holding that an eight month delay was unreasonable as a matter of law).

A reasonable jury would necessarily conclude that the notice delay in the present case of at least 34 months was not "as soon as practicable" as required by the terms of the policies. Chesapeake Defendants did not fulfill their duty to give prompt notice of the disputes which led to the suit. Compliance with the notice provision is a condition precedent for coverage under the policies; therefore, Plaintiff Owners Insurance has no duty to defend or indemnify any of the Chesapeake Defendants for the claims asserted in an underlying lawsuit. For all these reasons, the court **GRANTS** Plaintiff's motion for summary judgment [Doc. 56].

Even assuming *arguendo* that the Chesapeake Defendants were not required to notify Plaintiff Owners Insurance of the disputes with Axio and Gordon which led to

the lawsuit, the court nevertheless would grant summary judgment in favor of Plaintiff. Summary judgment is warranted because the Chesapeake Defendants breached their duty to notify Owners Insurance of Axio's lawsuit in a timely manner as required by the relevant terms of the insurance policies.  In a section entitled "Duties In The Event Of Occurrence, Claim Or Suit," the policies provide that if a "a claim is made or 'suit' is brought against any insured, [the insured] must: (1) Immediately record the specifics of the claim or 'suit' and the date received; and (2) Notify [the insurer] as soon as practicable.  [The insured] must see to it that [the insurer] receive[s] written notice of the claim or 'suit' as soon as practicable."  [Richards Aff., Exs. A, B].

The Chesapeake Defendants were served with the complaint filed by Gordon and Axio in August 2005.  [1:05-CV-2162, Doc. 1].  Brendan Murphy stated that within a few days, he called Mark Verbeke, the insurance agent for Chesapeake Development, discussed the lawsuit with him, and faxed him a copy of the complaint.  [Murphy Aff. ¶¶ 19, 27].  The next month, September 2005, Verbeke arrived at the Chesapeake office to discuss the renewal of insurance policies and present an insurance proposal. Murphy provided Verbeke with another copy of the complaint at that time, and they read through it together and discussed the claims. [Murphy Aff. ¶ 29].    The Chesapeake Defendants contend that their actions in notifying Verbeke of the Axio

22

lawsuit satisfied the policies' notice requirement. [Doc. 57 at 10-11]. The undersigned disagrees.

Mark Verbeke is employed by Taylor & Turner Insurance Services, Inc. d/b/a Taylor, Turner & Hartsfield. [Murphy Aff. ¶ 19]. Verbeke testified that he is an independent insurance agent who does not have an exclusive relationship with Plaintiff Owners Insurance. [Verbeke Dep. at 13, 59-60]. "Independent insurance agents or brokers are generally considered the agent of the insured, not the insurer." Southeastern Express Sys. v. Southern Guar. Ins. Co. of Georgia, 224 Ga. App. 697, 700, 482 S.E.2d 433, 435 (1997) (citations omitted). An insurance company is free to "place a purported agent in a position of apparent authority such that one might be justified in assuming that the agent had authority to receive notice" of an occurrence, claim, or lawsuit. Kay-Lex Co. v. Essex Ins. Co., 286 Ga. App. 484, 489, 649 S.E.2d 602, 607 (2007). However, in the present case, there is no evidence that Owners Insurance placed Verbeke in a position of apparent authority to receive notice.

The explicit terms of the policies provided that the Chesapeake Defendants were obligated to provide Owners Insurance  with "written notice of the claim or 'suit' as soon as practicable." [Richards Aff., Exs. A, B]. There is nothing in the policies which states that the Chesapeake Defendants could fulfill their prompt notice

23

obligation by notifying an independent insurance agent like Verbeke of Taylor & Turner Insurance Services.  [Id.].  "[N]either the language of the policy nor anything stamped upon the face of the policy gave apparent authority to the independent insurance agent to receive the notice required to be given to the insurer." Southeastern, 224 Ga. App. at 700, 482 S.E.2d at 435.

Defendants cite to Kitt v. Shield Ins. Co., 240 Ga. 619, 620, 241 S.E.2d 824, 825 (1978), for the proposition that an "insured's notice to the insurer's agent constitutes notice to the insurer."  Defendants' citation to Kitt is misplaced.  In that case, the insurance agent who received notice from the insured was one of the insurer's "duly authorized agents" who acted on behalf of the insurer in ways such as receiving payment for the premiums on the insurance policies.  Id.  In the present case, there is no evidence which would allow a reasonable jury to conclude that Verbeke was duly authorized to receive notice on behalf of Plaintiff Owners Insurance.  Chesapeake Defendants did not comply with the notice provision of the policies when they contacted Verbeke about the underlying lawsuit.

The Chesapeake Defendants waited until June 2006 to notify Owners Insurance of the lawsuit.  [Murphy Aff. ¶ 31; Richards Aff. ¶ 11].  This was ten months after Chesapeake Defendants were served with the complaint. [1:05-CV-2162, Doc. 1]. The

24

court finds that this ten month delay was unreasonable as a matter of law and that the Chesapeake Defendants failed to satisfy the insurance policies' prompt notice requirement.  <u>See</u> <u>Snow</u>, 182 Ga. App. 1, 354 S.E.2d 644 (ten month delay is unreasonable as a matter of law); <u>Richmond</u>, 140 Ga. App. at 221, 231 S.E.2d at 250 (eight month delay is unreasonable as a matter of law).  Because compliance with the lawsuit notice provision is a condition precedent for coverage under the policies, Plaintiff Owners Insurance has no duty to defend or indemnify any of the Chesapeake Defendants for the claims asserted in an underlying lawsuit.  Thus, even assuming *arguendo* that the Chesapeake Defendants were not required to notify Plaintiff Owners Insurance of the disputes with Axio and Gordon which led to the lawsuit, the court nevertheless would rule that Plaintiff's motion for summary judgment [Doc. 56] must be granted.

## IV.   Conclusion

For all the foregoing reasons and cited authority, the undersigned finds that Plaintiff Owners Insurance has no obligation to defend or indemnify the Chesapeake Defendants against the claims in the underlying lawsuit.  The court **ORDERS** that

25

Plaintiff Owners Insurance's summary judgment motion [Doc. 56] be **GRANTED** and

that declaratory judgment be entered in favor of Plaintiff.

      **SO ORDERED**, this 26th day of FEBRUARY, 2008.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)